**BARLOW v. WINTERS NATIONAL BANK & TRUST CO., Trustee et.**

**Probate Court, Montgomery County.**

No. 96990. Decided July 26, 1943.

Joseph L. Lair, Dayton, for plaintiff, Clifford E. Barlow.

Estabrook, Finn & McKee, Dayton, for the widow, Lillian K. Barlow.

Scharrer, Scharrer & Hanaghan, Dayton, for the Trustee, The Winters National Bank & Trust Co., of Dayton.

## OPINION

By WISEMAN, J.

This matter comes on to be heard on a petition for a declaratory judgment filed by Clifford E. Barlow, one of the principal beneficiaries under the last will and testament of Ray K. Barlow, deceased. The petitioner made the Winters National Bank & Trust Company, trustee of this estate, and the widow, Lillian M. Barlow, parties defendant. The defendants filed answers and propounded certain questions which broadened the issues in this case.

The will of Ray K. Barlow was probated September 23, 1942, and

the Winters National Bank & Trust Company was appointed executor on September 24, 1942. Said trust company was named as trustee in said will, and on the 3rd day of November, 1942, it was appointed trustee. The widow, Lillian M. Barlow, under date of December 23, 1942, filed her election not to take under the will. The inventory and appraisement shows a gross estate of $632,786.42, of which $136,700 consists of real estate. The appraisers set off $25,000 to the widow as her allowance for a year's support. The widow's exemption was $2500, the maximum under the law, of which $905.93 was taken in personal property and $1,594.07 in money.

The widow having elected not to take under the will, a question has arisen as to the interest which she takes in said estate; and in what manner said election affects the interest of the other beneficiaries under the will. A question has also arisen as to the right of the widow and the other beneficiaries to the rents collected from the real estate since the death of the testator and, also, to the income from the personal property.

The testator disposes of almost his entire estate in item five of his will, which provides:

"I give, devise and bequeath all the rest and residue of my estate, of every nature, whether real, personal or mixed, wheresoever situate, and which I may own or have the right to dispose of at the time of my decease, unto the Winters National Bank & Trust Company of Dayton, Ohio, its successors or assigns, or any Trust Company of Dayton, Ohio, that could be regarded as its successor, in trust, nevertheless, for the following uses and purposes * * * ."

In subdivision A of item five he gives full power and authority both to his executor and trustee to manage and control the property in said trust and to sell at public or private sale, to invest or reinvest the trust assets as it may deem proper and suitable for the investment of trust funds. In subdivision D of item five the testator provides:

"This trust estate shall be administered and distributed as follows:

(1) I hereby direct my Trustee to pay from the income of this trust estate, in convenient installments, preferably monthly, to my father, John H. Barlow, the sum of Twelve Hundred ($1,200.00) Dollars yearly.

(2) I hereby direct my Trustee to pay, in convenient installments, preferably monthly, to my wife, Lillian M. Barlow, one-half (½) of the remaining net income of this trust estate.

(3) I hereby direct my Trustee to pay, in convenient installments, preferably monthly, to my brother, Clifford E. Barlow. the other one-half (½) of the remaining net income of this trust estate.

(4) Upon the death of my wife, Lilliam M. Barlow, or upon the

death of my brother Clifford E. Barlow, the entire income from this trust estate, subject to the provisions hereinbefore made for my father, shall be paid to the survivor."

When the widow, Lillian M. Barlow, elected not to take under the will, she renounced all provisions made for her in the will. Such election, however, did not destroy the trust plan set up by the testator. His purpose must be carried out regardless of her election. The will remains operative in all of its provisions save and except that portion given to the widow. In item five, D, paragraph four, the testator provides that the entire income from the trust estate, subject to the provisions made heretofore for his father, shall be paid to Clifford E. Barlow as the survivor. The authorities hold that when the widow, through her election, renounces the provisions made for her in the will, the will operates as though she were dead. Any remainder interest which was dependent upon the continuance of the widow's tenancy or rights is accelerated so that the remainderman comes into possession of his estate immediately. The effect of the widow's election was to accelerate the remainder given to Clifford E. Barlow. **Davidson v. Savings & Trust Co.,** 129 Oh St 418 (1935); **National Bank v. Linn,** 22 OO 195 (1941); Page on Wills, Lifetime Edition, Vol. 4, page 89, Sec. 1390.

The election made by the widow does not in any way affect the yearly income given to the father, John H. Barlow. This income must be paid by the trustee and charged to the entire income of the trust.

A trustee when appointed takes title as of the date of death, unless a contrary intention is indicated in the will. In the case at bar there is no provision in the will **with respect to the time** the trust should take effect. Therefore, when the trustee was appointed in this trust it took title to the assets which were then placed in the trust, as of the date of death of the testator. The court draws a distinction between the income from real and personal property. The title to all personal property passes to the administrator or executor for the purpose of paying debts and later making a distribution; whereas the title to real estate passes to the heirs at law or the devisees under the will. The title to realty vests immediately upon the death of the testator. **Bank, Savings & Trust Co. v. Gilchrist,** 23 Oh Ap 87; **Carr, Gdn. v. Hull,** 65 Oh St 394 (1901); 40 O. Jur., page 195, §49.

The court will now consider what interest the widow takes in the estate of the testator, she having elected not to take under the will. She is entitled to her exemption under §10509-54 GC, which in this case is $2500 taken in money and chattel property; she is also entitled to receive a year's allowance, which the appraisers in this case

have set off to her in the sum of $25,000. Under §10504-55 GC, the surviving spouse is entitled to take not to exceed one-half of the net estate. The words of that statute have caused the courts considerable difficulty in determining the nature and character of the interest taken by the spouse who elects not to take under the will. The statute provides: "In the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate."

Counsel for the widow contends that since decedent left no children surviving, she is vested with an undivided one-half interest in all of the assets of the estate subject, however, to the payment of the debts and costs of administration. It is further contended that she is entitled to the income from one-half of the net estate. When the spouse elects not to take under the will, is the interest which such spouse takes in the assets of such estate of such a character as would give the spouse the right to the income from the estate assets collected after the death of the testator? Does the spouse under such circumstances take the same interest in the estate assets as if the decedent had died intestate? We do not think so.

Section 10504-55 GC, is a part of the Probate Code which went into effect January 1, 1932. The first reported case to be decided after the effective date of this statute is **Weller v. Weller, 32 N. P. (N. S.), 329** (1934). In that case the court held:

"This court, therefore, if of the opinion and finds that the meaning of the term 'estate' as used in §10504-55 GC, is the amount of the estate after the payment of debts and costs of the administration, and not the gross estate."

This opinion only touches upon one phase of the issue raised in the instant case; i. e., the question as to the quantum of the estate taken by the widow. It does not reach the question as to the character of the interest taken. In point of time, the next case reported is **Miller v. Miller, 129 Oh St 230** (Feb. 27, 1935) in which our Supreme Court held:

"The phrase 'under the statute of descent and distribution', as used in §§10504-55 and **10504-60 GC**, does not mean that the surviving spouse is actually placed within the operation of the statute of descent and distribution (§10503-4 GC) but such phrase is used as merely definitive or descriptive of the share to be taken by the surviving spouse within a limitation of not to exceed one-half of the estate."

The court in that case held that the general section controlling descent and distribution (§10503-4 GC) is only considered a measur-

ing stick to determine the amount of the estate which shall be taken, and that §10504-55 GC, places a limitation on that amount. The court concludes that the spouse, upon electing not to take under the will, does not take under the general section of descent and distribution and therefore does not take under the intestate laws; that such spouse takes by operation of another and independent statute, which in effect means that such spouse takes by operation of law.

Judge Zimmerman, who decided the Miller case, later in the same year wrote the opinion in the case of **Davidson v. Savings & Trust Co., 129 Oh St 418,** in which the court quoted with approval from Corpus Juris, as follows:

"A taking against the will by surviving spouse does not operate **to render the estate intestate,** and is not allowed to break the testamentary plan further than is absolutely necessary. * * * But the will is construed as if it contained no provisions for the renouncing spouse, and distribution is made as if he or she had died. * * *"

On the question of the right to income, the court on page 429 say:

"As to the position of plaintiff in error that the lower court erred in adding income from the estate, accruing after the death of William R. Davidson, to the principal, and allowing the executor to make all disbursements and distribution from the whole, we think this was probably a sensible and practicable way to dispose of the matter. However, the authorities support plaintiff in error's position.

"It is stated in 2 Perry on Trusts and Trustees (7 Ed.), 939, §551, that 'The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date.' Authorities confirming this general proposition are legion."

The court then cites authorities in support thereof. In that case it must be observed that all of the assets consisted of personal property, and the question as to the right to rents from real estate did not arise. The court on page 430 held:

"Disbursement and apportionment of this particular estate, which in some respects is admittedly arbitrary, should be made by the executor on the following basis; out of the entire principal or corpus, exclusive of dividends and interest, should be paid the widow's year's allowance of $3600 and the allowance of $2500 awarded under §10509-54 GC; the debts and other expenses enumerated in §10509-21 GC * * *; the commissions and allowances to which the

executor may be entitled, and all attorneys' fees to which the executor is indebted, as approved by the probate court."

The court then directed that the remaining principal or corpus of the estate be divided into two equal parts: one part to be given to the widow, and the other part to be allotted to the trust. In discussing the distribution of the income, the court on page 431 say:

"The interest, dividends and other income received by the executor from the time of its appointment to the time of filing its final account in probate court, should be divided into two equal parts. one part thereof should be paid to the widow, * * *."

This much of that opinion decides the question in the case at bar as to what income the widow is entitled to from the personal property, which is one-half of the income. The judgment of the court with respect to the other half of the income which went into the trust and was distributed to the beneficiaries of the trust on an equitable basis, has no application to the case at bar.

In the case of **Shearn v. Shearn, 14 OO 262**, wherein the decedent died without children or parents surviving, but leaving a widower who elected not to take under the will, the court held that the widower did not take the whole estate under the provisions of §10503-4 GC, but was limited to one-half of the net estate under §10504-55 GC. The court cites with approval **Miller v. Miller, supra,** and **Davidson v. Savings & Trust Company, supra,** and held that "§10504-55 GC, establishes the manner of such taking in cases of testacy rather than the character of the estate to be received." The court held that the widower, having elected not to take under the will, did not take a fee simple title in the property. The court held as follows:

"It does not pass the fee in whole or in part to him. It but says that he shall have 'one-half of the net estate' devised."

The court further held:

"Where, in such case. the personal estate of the deceased is inconsequential, the surviving spouse is not entitled to maintain an action for partition of the real estate, but the estate should be ordered sold for the purpose of making an equitable distribution among the disappointed devisees, after paying one-half to the surviving spouse."

The court further held that the probate court had full power granted to it under §10510-3 GC. to order a sale for the purpose of making such a distribution, and then observed that the will itself

gave the executrix full power and authority to make such a sale. In the case at bar, the will gives both the executor and trustee full power of sale.

In the case of **National Bank v. Linn, 22 OO 195,** the court held:

"Under §10504-55 GC, a surviving spouse, who elects not to take under the will of a deceased consort, dying without issue, takes one-half of the 'net estate'. This has been construed to mean that such renouncing spouse does not take an intestate share in the same manner as if the decedent had left no will, but that such spouse has a distributive share equal to one-half of the 'net estate'." (Ohio cases cited)

The court further held:

"The interest of a surviving spouse who elects not to take under the will of a deceased consort, is similar to that of a preferred creditor, etc."

The court notes that the case of **Fee v. Linthicum, 11 OO 568,** is at variance with the law laid down in the other cited cases. That court held that the heir of a deceased spouse who had elected not to take under the will of his deceased consort, could maintain an action in partition. The court cited with approval the case of **Miller v. Miller, supra,** but, we believe, failed to properly apply the law to the issue in that case. If the court had applied the law as laid down in **Miller v. Miller** and **Davidson v. Trust Company, supra,** it would have held that no fee simple title to the property passed, under the several statutes referred to, and the plaintiff in that case could not have maintained an action in partition. We refuse to follow the judgment of that court.

In applying the law of Ohio to the principal questions for determination, and the facts and circumstances in this case, the court finds as follows:

1. That the widow is entitled to one-half of the net estate remaining after deducting the widow's exemption, year's allowance, debts of the estate and costs of administration.

2. That the election of said widow not to take under the will does not affect the operation of the will as to the remaining provisions, but the provisions of said will remain effective, and such election only affects the quantum of the estate which may pass thereunder; that since the widow by her election renounced her right to a life income, the provisions of the will operate in the same manner as if such surviving spouse had died.

3. That the interest which such widow takes in the assets of said estate is not that interest which is taken by a surviving spouse when the decedent dies intestate; that such spouse does not take a fee simple title in an undivided one-half of said real estate left by the decedent; that the interest which such surviving spouse takes

is in the nature of a distributive share, which under the statute is made a charge on all of the assets of said estate.

4. That should the personal assets remaining in the net estate be insufficient to discharge this claim of the widow, the executor has full power and authority under the law to sell the real estate to pay her claim.

5. That under the law the personal estate goes to the executor for the purpose of paying debts and costs of administration; that the income received from the personal estate before distribution goes to the executor and becomes a part of the estate, and finally becomes a part of the net estate.

6. That the title to the real estate upon the death of the testator descended to his devisee under his will; that the rents and profits derived from the real estate from and after the death of the testator are not assets of said estate and do not go to the executor, but go to the devisee.

7. That where the testator in his will devises his real estate to the trustee, as in the case at bar, upon the appointment of such trustee its title relates back and takes effect as of the date of the death of the testator, and such trustee is entitled to collect all the rents and profits from said real estate after the date of death of the testator; that such rents and profits do not become a part of the net estate in determining the widow's share.

8. That the income from the personal property received by the executor prior to distribution does become a part of the net estate in determining the widow's share.

9. That the election of the widow does not in any way affect the payment of the $10,000 legacy to the brother of the testator, but does deprive the widow of the right to receive the personal articles and the legacy given to her under item three.

10. That the election of the widow does not deprive the father of his right to receive the $1200 yearly from the income of the trust estate under item five, subdivision D, paragraph one of said will. The trustee is required to pay this yearly income to the father, John H. Barlow, beginning as of the date of death of the testator, and the payment thereof is charged to the trust estate.

11. That the widow's share is determined on the basis of the appraised value of the real and personal property which has not been sold. The widow's share is first chargeable to the personal estate after the payment of debts and costs of administration. If the personal estate is insufficient to pay the widow's share, the real estate must be sold to pay the same.

12. That the payment of the $10,000 legacy to Clifford Barlow is subservient to the payment of the widow's share out of the personal estate; and if all the personal estate is consumed to pay the widow, the legacy lapses, as the will does not make the payment of the legacy a charge on the real estate.

13. That Lillian M. Barlow is not entitled to any part of the income of the trust estate; that because of the widow's election not to take under the will, Clifford E. Barlow takes an accelerated remainder in the trust estate and is entitled to the entire income of the trust, burdened for the payment of $1200 yearly to the father, John H. Barlow, during his life; that the date of the widow's election has no effect on the division of the trust income.

14. That no part of the personal estate or income therefrom should be distributed to the trust until the full share of the widow, together with the debts and costs of administration, and legacies, are paid.

15. That a distribution by the trustee of the net rents from the real estate may be made at once, first to the expenses of the trust, and then to discharge the claim of the father, and the remaining portion to the brother. The widow is not entitled to any income from the real estate in payment of her share of the net estate.

16. That all expenses incident to the management and control of the real estate by the trustee, such as repairs, taxes, insurance, are chargeable to income from such real estate and paid by the trustee. Compensation to the trustee for services rendered in the administration of the trust will be allowed by the court upon filing of a proper application by the trustee. Such compensation will be paid out of the trust income.

17. That the note secured by a mortgage on the real estate is a debt of the estate and should be paid by the executor out of the personal estate, which includes income from the personal estate prior to distribution. The payment of such note has the effect of reducing the net estate for division between the widow and the trust, in the same manner as the payment of any other debt of the estate.

18. It is the duty of the executor to pay the income tax on the income from the personal estate before distribution, and such tax is chargeable to the entire personal estate before distribution is made to the widow and the trust. The trustee pays the income tax on the income received from the real estate; and also on the income received from the personal estate after such personal estate is distributed to it; and such tax is chargeable to the trust estate.

19. That included in the debts of the estate which must be paid by the executor out of the corpus and charged first against the personal estate, are all estate and inheritance taxes assessed against the value of the inheritance of the father, or brother, as provided in item two of the will. In item two the testator provided that estate. inheritance and succession taxes should be paid out of his estate only with respect to "any annuities, bequests, legacies or devises, contained in this, my last will and testament * * *." The widow. by electing not to take under the will, cannot take advantage of this provision and she will be required to pay tax on the value of her succession.

20. That the trustee, having been named in the will of the testator, was properly appointed without notice first being given to the parties in interest, under the provisions of §§10501-53 and 10506-2 GC.

Counsel will draw the proper entry. The costs of this proceeding will be assessed against the estate, and paid by the executor out of the estate funds.